**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARDELL ABRAMS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-2846** |
| | : | |
| **SUPERINTENDENT J. TERRA, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**SCOTT, J.** **JULY 28 , 2026**

Before the Court is the motion (ECF No. 13) filed by Defendants C/O Danielle McAfee, Sgt. Matthew Green, and Unit Manager Shezsurnice Thomas to dismiss the Amended Complaint (ECF No. 8) filed by Plaintiff Mardell Abrams asserting Eighth Amendment claims. Defendants argue that Abrams failed to exhaust his available prison grievance procedures and that the claim against Thomas is not plausible. After much delay, Abrams has filed a response (ECF No. 19).[1] For the following reasons, the motion is granted as to Thomas with leave granted to Abrams to file a second amended complaint. The motion is otherwise denied.

## I. PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS[2]

[1] Abrams was directed to respond to the motion by February 23, 2026 (ECF No. 14). When he failed to do so, the Court issued an order on March 16, 2026 for Abrams to show cause why the case should not be dismissed (ECF No. 15.) On April 23, 2026, Abrams filed a motion for extension of time to file his response (ECF No. 17), which the Court granted (ECF No. 18). Abrams filed his response on June 22, 2026.

[2] The factual allegations set forth in this Memorandum are taken from Abrams's Amended Complaint ("Am. Compl."). (ECF No. 8.) The Court adopts the sequential pagination assigned to the Amended Complaint by the CM/ECF docketing system.

Abrams, a convicted prisoner incarcerated at SCI Phoenix, initially filed his Complaint (ECF No. 2) in this case on June 2, 2025 alleging Eighth Amendment claims. Attached to the Complaint as exhibits were copies of Grievance No. 1072558 ("the 558 Grievance"), including Abrams's grievance form, its denial at the initial review level, Abrams's appeal to the facility manager, the Facility Manager's Appeal Response, Abrams's subsequent appeal to the Secretary's Office of Inmate Grievances & Appeals ("SOIGA"), and SOIGA's Final Appeal Decision, dismissing the grievance because Abrams failed to provide that office with a legible copy of his initial grievance for proper review. (ECF No. 2-1 at 2-7.)

In a Memorandum and Order filed on June 10, 2025 (ECF Nos. 5 & 6), the Court dismissed the Complaint but permitted Abrams an opportunity to amend his failure to protect claim against Defendants McAfee, Green, Thomas. The failure to protect claim was based on an incident where Abrams's cellmate threw scalding hot water on him causing burns to the back of his neck, but the claim was deemed not plausible because he failed to allege facts to show that the Defendants were deliberately indifferent to a pervasive risk of harm. (ECF No. 5 at 6-9.) Abrams filed an Amended Complaint on August 5, 2025 (ECF No. 8).[3]

In the Amended Complaint, Abrams alleges that on January 18, 2025, at approximately 11:00 a.m., he approached Defendant McAfee, the block officer, and asked to be moved to a new cell because he and his cellmate "cannot live together." (Am. Compl. at 5.) He asked to be moved because his cellmate had a "violent past" and "could harm" him. (*Id.*) McAfee told Abrams that she would talk to Sgt. Green about a potential move but never did. (*Id.*) "Since

[3] When Abrams failed to file anything within the thirty-day time period provided by the Court, an order dismissing the remaining claims was filed on August 4, 2025 (ECF No. 7). When the Amended Complaint was received, the Court vacated the dismissal order and directed service on Green, McAfee, and Thomas (ECF No. 9).

McAfee was taking too long, [Abrams] approached Sgt. Green with the same complaint," and Green told Abrams he would talk to Unit Manager Thomas about whether Abrams could move cells. (*Id*. at 5, 13.) Green allegedly told Abrams "they" knew his cellmate was "crazy." (*Id*. at 5.) Abrams is unsure of whether Green ever spoke to Thomas, or whether Thomas ignored the request to have him moved. (*Id*. at 13.) That evening while he was sleeping, the cellmate threw a mixture of Vaseline and boiling water heated on a "stinger" onto Abrams's back and the back of his neck, causing first- and second-degree burns. (*Id*.) Abrams filed a grievance that he alleges was denied at "every level." (*Id*. at 7, 13.) Abrams alleges that the Defendants "knew of [his cellmate's] behavior" including throwing hot water on another inmate, and still kept them together in a cell. (*Id*. at 14.)

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)

(explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)*; see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (same). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up) (*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024)). The Court affords a liberal construction to factual allegations when a complaint is filed by a self-represented litigant, particularly where the *pro se* litigant is imprisoned. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013).

Dismissal of a complaint based on an affirmative defense, such as a prisoner's failure to exhaust available grievance procedures, is only appropriate at the pleading stage when the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "[W]hile a court may entertain a motion to dismiss on [affirmative defenses], it may not allocate . . . [burdens] . . . in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (internal citation omitted). Rather, the burden of pleading and proving an affirmative defense is borne by the defendant. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).

## III. DISCUSSION

### A. Exhaustion

"Exhaustion is . . . a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, . . . it constitutes a threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (internal quotations omitted). Accordingly, in cases governed by the Prison Litigation Reform Act ("PLRA"), courts must address whether the prisoner-plaintiff has substantially complied with the prison's specific grievance procedures and determine whether those procedures were "available" to the inmate. *Id.*; *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000) ("[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial.").

Under the PLRA, prisoners who seek to challenge their conditions of confinement must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). However, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Accordingly, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (concluding that prisoner failed to exhaust when he did not name defendant in his grievance as required by the prison grievance procedure). "Exhaustion merely requires inmates to provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 296 (3d Cir. 2016) (internal quotations and alteration omitted). Claims that are not properly exhausted under the PLRA are procedurally defaulted from being pursued in federal court. *See Woodford*, 548

U.S. at 92-93; *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004). An inmate's failure to comply with the exhaustion requirement of the PLRA is an affirmative defense, *Jones*, 549 U.S. at 216, and the burden of proving a failure to exhaust rests with the defendants. *Brown v. Croak*, 312 F. 3d 109, 111 (3d Cir. 2002).

The Pennsylvania Department of Corrections' s general grievance process is set forth in policy number DC-ADM 804, which is available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last viewed Jan. 31, 2024). *See generally Moore v. Lamas*, No. 22-1007, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023) ("DC-ADM 804 provides a general, though rigorous, mechanism for inmate grievances."). Among other requirements, the grievance must be signed, dated, legible, understandable, and presented in a courteous manner. DC-ADM 804, §§ 1.A.10, 11. The United States Court of Appeals for the Third Circuit has stated that:

> ADM 804 creates the three-step Inmate Grievance System. First, an inmate must submit a grievance to the Facility Grievance Coordinator. The grievance must include the relevant facts, individuals involved, claims alleged, and relief sought. A different official—the Grievance Officer—reviews the grievance and submits an initial response. The inmate may appeal the initial response to the Facility Manager, who reviews it and issues a decision. The inmate may file a final appeal to the Secretary of Corrections' Office of Inmate Grievances and Appeals. . . . ADM 804 requires an inmate to specify in his grievance any alleged violation of department regulations or other law as well as specify the compensation or legal relief the inmate desires.

*Prater v. Dep't of Corr.*, 76 F.4th 184, 203-04 (3d Cir. 2023). ADM 804 "is the exclusive means of exhaustion," so failure to "follow the full administrative review process under ADM 804" results in a failure to exhaust under the PLRA. *Id*. at 204.

Abrams asserts as fact that he exhausted his claim. (Am. Compl. at 6-8; ECF No. 2-1 (grievance document attached to Complaint); ECF No. 19 at 1-2.) The Commonwealth Defendants argue nonetheless that he has failed to exhaust, and thus his claims are procedurally

defaulted in federal court, because SOIGA determined that he failed to provide that office with a legible copy of his initial grievance. (ECF No. 13 at 7 ("The grievance records provided by Plaintiff demonstrate that Plaintiff failed to exhaust his remedies, and the Amended Complaint should be dismissed with prejudice.").) The 558 Grievance documents Abrams attached to his original Complaint show that the grievance process was available to him and that SOIGA denied final review of the 558 Grievance because he failed to provide that office with a legible copy of his initial grievance form. (ECF No. 2-1 at 6-7.) But that is not necessarily a complete resolution of the exhaustion issue.

Courts have held that the failure to provide legible copies of the initial grievance when filing an appeal violates ADM 804 and constitutes a procedural default of the exhaustion requirement. *See*, *e.g.*, *Mack v. Klopotoski*, 540 F. App'x 108, 112 (3d Cir. 2013) ("The Secretary must be able to review an inmate's previous submissions in order to evaluate the merits of his final appeal."); *Brown v. Smith*, No. 18-193, 2021 WL 4429847, at *8 (W.D. Pa. Sept. 27, 2021), *aff'd on other grounds*, No. 21-3127, 2022 WL 2383609 (3d Cir. July 1, 2022) (collecting cases and holding that, because ADM 804 § 2.B.1.j.1 requires that an appeal include a "legible copy of the Initial Grievance," "courts have held that including illegible documents violates the rule and constitutes a procedural default." (citations omitted)). Indeed, in *Brown*, the district court found that the plaintiff failed to exhaust administrative remedies because he failed to include a legible copy of his initial grievance with his appeal to the SOIGA while acknowledging that doing so "may appear harsh." *Brown*, 2021 WL 4429847, at *8. The court concluded, nonetheless, that it was "bound by the PLRA to apply the prison's available administrative exhaustion rules, however stringent." *Id.*

However, there is a crucial distinction between this case and cases such as *Mack* and *Brown*. Those cases involved situations where the SOIGA had sent the prisoner notice that his appeal was incomplete before dismissing the appeal. *See Mack*, 540 F. App'x at 110 ("On February 14, 2008, the Chief Grievance Officer in the Secretary's Office sent Mack notices that he had not properly complied with the grievance appeal procedure [because he did not provide copies]" ); *Brown*, 2021 WL 4429847, at *6 ("SOIGA sent him an "Action Required" notice on January 26, 2017, explaining that his appeal was incomplete according to the DC-ADM 804 because he had not attached the following documentation"). In other words, in those cases the plaintiffs had specifically been sent notice that they had not provided a legible copy to SOIGA, apparently to allow the prisoner to remedy the situation so that his appeal could be considered on its merits. *See Brown*, 2021 WL 4429847, at *6. Here, on the other hand, the record is silent as to what measures, if any, SOIGA took to notify Abrams in regard to the deficiency in his appeal before dismissing it. Given that Abrams has submitted a legible copy of the 558 Grievance to the Court with his initial Complaint (ECF No. 2-1 at 2), that exhaustion is an affirmative defense that must be proved by a defendant, the significance of this issue in *Mack* and *Brown*, and the lack of any indisputably authentic documentation in this regard, the Court will not decide the exhaustion issue at this time.[4] *Accord*, *Diehl v. Purborsky*, No. 25-158, 2026 WL 2102587, at *10 (W.D. Pa. June 11, 2026) (declining to grant motion dismiss claim on exhaustion grounds where the record was silent as to what measures, if any, the SOIGA took to notify Plaintiff in

[4] While the Commonwealth Defendants acknowledge that it is their burden to demonstrate exhaustion (ECF No. 13 at 6), argue that the failure to provide legible copies is sufficient to show a failure to exhaust (*id*. at 8-9), and suggest that a full scale evidentiary hearing is not mandatory to resolve the issue – pointing to the 558 Grievance records submitted by Abrams (*id*. at 9), they have not themselves provided the type of notice found determinative in *Mack* and *Brown*, nor intimated that such notice even exists.

regard to the deficiency in his appeal before dismissing it), *report and recommendation adopted*, 2026 WL 2100844 (W.D. Pa. July 21, 2026).

**B. Defendant Thomas**

Abrams's claim against Defendant Unit Manager Thomas is not plausible and will be dismissed. Abrams alleges only that, after he told Defendant Green about his fear of his cellmate and Green allegedly told him that "they" were aware that his cellmate was "crazy," (Am. Compl at 5). Abrams stated that he was unsure of whether Green ever spoke to Thomas, or whether Thomas ignored the request to have him moved. (*Id*. at 13.) The Commonwealth Defendants argue that this type of speculative assertion is insufficient to allege that Thomas had actual knowledge of the event and acquiescence in the actions of others.[5] (ECF No. 13 at 7-8.)

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). The limited allegation in the Amended Complaint that Green *may have* told

[5] Abrams addresses this argument in his Response by asserting facts that were not alleged in his Amended Complaint. While his pleading is unclear as to Thomas's role, he asserts in his Response that he asked Thomas (and the other two Defendants) to move the inmate and Thomas denied the request after the other two went to her prior to the assault. (ECF No. 19 at 4-5.)

Thomas about the cellmate and that Thomas *may have* ignored the request to have him moved is insufficient to meet this standard. Because Abrams may be able to allege additional facts about Thomas's involvement, he will be granted leave to file a second amended complaint.

## IV. CONCLUSION

For the reasons stated, the Defendants' motion will be granted to the extent they seek dismissal of the § 1983 claim against Unit Manager Thomas. The motion is otherwise denied. Abrams will be given an opportunity to file a second amended complaint if he is able to allege additional facts about Defendant Thomas's personal involvement, or proceed only on his claims against the remaining Defendants. Defendants may reassert their exhaustion argument following discovery on the issue. An appropriate order will be entered.

**BY THE COURT:**

/S/ Kai N. Scott

**KAI N. SCOTT, J.**